ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
GINA SZETO-WONG   10515
JONATHAN M.F. LOO  10874
KEVIN YOLKEN          10987
820 Mililani Street, Suite 502
Honolulu, Hawaii 96813
Telephone:  (808) 533-7434
E-Mail:      eseitzatty@yahoo.com
                szetogina@gmail.com
                jloo33138@yahoo.com
                kevinyolken@gmail.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRENON  NASH;  ROBERT GIBSON; CHAUNCY HATA; and LANA HEICK; individually  and  on behalf of  all others similarly situated,<br><br>            Plaintiffs,<br>       vs.<br><br>DAVID  Y. IGE;  JOSH GREEN; NOLAN ESPINDA, and  DOES  1-50,<br><br>            Defendants. | CIVIL No. 20-398<br><br>**CLASS ACTION COMPLAINT FOR  DECLARATORY JUDG-MENT AND DAMAGES** |

## CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiffs  BRENON NASH,  ROBERT GIBSON,  CHAUNCY HATA, and LANA HEICK, (hereinafter, collectively "Plaintiffs") individually and on behalf of the proposed Class of all other persons similarly situated, by and through their undersigned attorneys, allege as follows:

### NATURE OF ACTION

1.    This is a class action lawsuit seeking a declaratory judgment and monetary damages from the Defendants for their knowing, deliberate, willful, and acts and omissions that exposed Plaintiffs and members of the Plaintiff class to a serious and potentially fatal illness. This action arises out of Defendants' unconstitutional and disgraceful treatment of inmates and corrections staff at risk for, exposed to, and/or diagnosed and suffering from COVID-19 in Hawaiʻi's eight jails and prisons.

### JURISDICTION AND VENUE

2.     This court has original jurisdiction to hear this matter pursuant to 28 U.S.C. Sections 1331 and 1343, *inter alia*.  Any and all state law claims contained herein are part of the same case or controversy giving rise to the federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. Section 1367.

2

3.      Venue is proper in the United States District Court for the District of Hawaiʻi pursuant to 28 U.S.C. Section 1391 as all parties to the litigation reside in the State of Hawaiʻi, and all actions and/or omissions giving rise to the claim occurred and continue to occur in the State of Hawaiʻi.

## PARTIES

4.      Plaintiffs  BRENON NASH,  ROBERT GIBSON and  CHAUNCY HATA are and have been incarcerated at the Oahu Community Correctional Center ("OCCC") and are and have been residents of the State of Hawaii at all times pertinent hereto.

5.      Plaintiff LANA HEICK is and has been employed as a corrections officer at OCCC and is and has been a resident of the State of Hawaii at all times pertinent hereto.

6.      Defendant DAVID Y. IGE ("Defendant Ige") is and has been the Governor of the State of Hawaii with responsibility for the direction and supervision of all state governmental functions including the operation of state correctional facilities and institutions.  Defendant Ige is and has been a resident of the State of Hawaii at all times pertinent hereto and is sued herein in both his official and his individual capacities.

7.      Defendant JOSH GREEN ("Defendant Green") is and has been the Lieutenant Governor of the State of Hawaii with assigned responsibilities for the

3

creation, development, and implementation of policies and practices to prevent, contain, and treat outbreaks of the COVID-19 virus in the State of Hawaii including, specifically, in state correctional facilities and institutions. Defendant Green is and has been a resident of the State of Hawaii at all times pertinent hereto and is sued herein in both his official and individual capacities.

8.     Defendant NOLAN ESPINDA ("Defendant Espinda") is and has been the Director of the State of Hawaii Department of Public Safety ("DPS") and is and has been a resident of the State of Hawaiʻ at all times pertinent hereto. Defendant Espinda is sued herein in both his official and individual capacities.

9.     DOES 1-50 (hereinafter, "Doe Defendants") are individuals whose true identities and capacities are as yet unknown to the Plaintiffs and their counsel, despite diligent inquiry and investigation, and who are responsible in some manner for the occurrences and Plaintiffs' damages, as herein alleged. The true names and capacities of Doe Defendants will be substituted as they become known. Plaintiffs are informed and believe, and thereupon allege, that at all times herein mentioned, Doe Defendants were the agents, servants, and/or employees of each of the other Defendants and/or Doe Defendants and were acting with the permission and consent and within the course and scope of said agency and employment. For purposes of this Complaint, DPS policymakers, administrators, and/or persons with supervisory or decision-making authority regarding the issues that are the subject

4

of this Complaint are designated as DOES 1-10. DOES 10-50 are DPS employees without supervisory or decision-making authority who may be liable on the Complaint but who have not yet been discovered and named. DOES 1-50 are sued herein in their official and individual capacities.

## CLASS ALLEGATIONS

10.    Plaintiffs bring this action individually and in their representative capacities on behalf of all others similarly situated pursuant to Fed. R. Civ. P. Rule 23. This action satisfies all requirements of Rule 23: numerosity, commonality, typicality, fair and adequate representation, and predominance and superiority.

11.    The proposed Class members consist of two sub-classes:

> All inmates incarcerated in a jail or prison in Hawaiʻi who were exposed to and contracted the COVID-19 virus; and

> All correctional staff members working in a jail or prison in Hawaiʻi who were exposed to and contracted the COVID virus.

12.    The proposed Class definitions may be amended by the Plaintiffs prior to certification by the Court if such amendment is deemed necessary or appropriate, including the addition of additional subclasses.

## CLASS ACTION REQUIREMENTS

### Numerosity: Fed. R. Civ. P. 23(a)(1)

13.     The proposed members of Plaintiffs' Class are so numerous that joinder of all the members is impossible. The proposed Class consists of hundreds of inmates and staff who are or who have been incarcerated and/or employed in a Hawai'i jail or prison and thereby contracted the COVID-19 virus.

### Commonality: Fed. R. Civ. P. 23(a)(2)

14.     There are significant issues of law and fact in this case that are common to the proposed Class as a whole, and central to resolution of the core issues in this matter. The nature and scope of the proposed Class claims expose the gravity of the Defendants' disregard for the safety and well-being of inmates and staff. Moreover, a class action proceeding will best equip the Court with the information necessary to grasp the fundamental problems within the Department. Class litigation is the superior method to manage such comprehensive claims and will afford a large number of similarly harmed persons the ability to pursue this action in circumstances where individual claims are minimal, thus promoting economic efficiency and promoting a fair and judicially efficient resolution of the issues. Without such litigation, Defendants have no incentive to reverse the current course of deliberate inaction and neglect of responsibility, thereby causing continued and intolerable harm to inmates and staff.

6

15.    Some questions of law and fact that are common to the proposed

Class include whether Defendants:

    a.    Failed to identify and prevent the risks of COVID-19 to the health and

        well-being of inmates and staff;

    b.    Have been deliberately indifferent to the resulting harm and risk of

        harm to inmates and staff;

    c.    Failed to exercise reasonable care or otherwise take reasonable

        precautions to prevent exposure and illness to inmates and staff;

    d.    Failed to quarantine inmates who were or may have been exposed to

        COVID-19;

    e.    Housed exposed and/or tested inmates with other inmates who had not

        exhibited symptoms and/or been tested;

    f.    Failed to provide safety equipment or to reasonably separate inmates

        exposed, tested, and/or diagnosed with COVID-19;

    g.    Locked inmates in seclusion after diagnosis with COVID-19 with no

        follow-up treatment or care, inadequate food, and no ability to

        communicate with their families or counsel;

    h.    Allowed inmates and staff to enter and leave the facilities without

        adequate screening and/or precautions;  and

i.    Exposed and required staff to work in proximity to inmates who already had demonstrated symptoms.

16.    The questions of law and fact are common questions which are capable of class-wide resolution, and central to every proposed Class member is the Defendants' failure to provide for the safety and well-being of inmates and staff.

## Typicality: Fed. R. Civ. P. 23(a)(3)

17.    The claims of the representative Plaintiffs are typical of the claims of the proposed Class.  Plaintiffs and all other members of the proposed Class have sustained similar injuries arising out of and caused by Defendants' policies, practices, procedures, and customs in violation of the law as alleged.  Because the claims of the representatives are typical of the proposed Class as a whole, the absent Class members will be protected in a manner that is both economic and efficient.

## Adequacy: Fed. R. Civ. P. 23(a)(4)

18.    The representative parties will fairly and adequately protect the interests of the proposed Class.  Plaintiffs have suffered adverse consequences as a direct result of the Defendants' inaction with respect to the needs of inmates and staff and are committed to vigorously pursuing all available legal remedies.  All Class representatives have a strong desire to see that corrective action is taken in

an effort to prevent future harm to themselves, and other inmates and staff. Similarly, Plaintiffs' counsel have extensive experience, are firmly resolved to protecting the rights and interests of clients, and will zealously pursue this matter on behalf of the proposed Class.  To the best of counsel's knowledge, neither counsel nor the representative Plaintiffs have any conflicts of interest with other proposed Class members that would prevent or interfere in any way with counsel's representation of the proposed Class or the claims asserted and relief sought herein.

<u>Fed. R. Civ. P. 23(b)(2)</u>

19.    The  Defendants,  having  been  presented  with  innumerable opportunities to protect the inmate population and staff, have refused to act on behalf of the named Class.  Such inaction applies generally to the entire proposed Class as a whole.

<u>Fed. R. Civ. P. 23(b)(1)(A) and (B)</u>

20.    The questions of law and fact regarding the Defendants' repeated and deliberate indifference towards the safety and well-being of inmates and staff exposed to the risks of COVID-19 are the predominant questions driving this litigation.  The differing factual claims of individual Class members are not a roadblock to Class certification when the claims central to all proposed Class members predominate, and a Class-wide judicial solution is not only practical, but remains the superior method for a fair and efficient resolution of the Plaintiffs'

claims. The primary interest of the proposed Class members is to compensate all injured parties and to see change in the Defendants' policies, procedures, and practices, and there is little interest to individually control separate actions. Moreover, maintaining class status is preferable for achieving the desired results, and will not present any exceptional difficulties.

## COMMON FACTUAL ALLEGATIONS

21.    DPS is a public entity, duly organized and existing under the laws of the State of Hawai'i.  Pursuant to the laws of the State of Hawai'i DPS is authorized and required to establish and adhere to procedures and policies to ensure the physical, emotional, and mental health and safety of prisoners under its jurisdiction.  DPS also is required to hire, supervise, and train its employees to ensure that they carry out the policies and procedures of DPS and preserve the safety of prisoners incarcerated in all correctional facilities in the State of Hawai'i. At all times relevant to the facts and claims set forth in this Complaint, DPS was and is responsible for the acts and/or omissions and the policies, procedures, and practices of its officers, managers, employees, and/or agents.

22.    As Director of DPS, Defendant Espinda has at all relevant times been responsible for the actions and/or inactions of its officers, managers, employees and/or agents. Further, DPS has at all times relevant to this matter been required to ensure that all of its policies, procedures, and practices as well as all applicable

statutes, administrative code and department regulations are adhered to completely and fully by Hawaiʻi's eight jails and prisons and their officers, managers, employees, and agents.

23.    The Defendants incarcerate pretrial and convicted prisoners in overcrowded housing facilities with insufficient and inadequate space and capabilities of maintaining distances, quarantining, preventing, and treating COVID-19.

24.    Additionally, Defendants lack adequate staff and other resources to test, diagnose, and trace the source of COVID-19 infections in the facilities they operate thereby exposing inmates, staff, and members of the community at large to unacceptable risks that the infection will spread and endanger the well-being of thousands, if not tens of thousands, of persons.

25.    Commencing in March, 2020, the Defendants received specific warnings from experts about the risks of the COVID-19 infection in Hawaii correctional facilities and institutions with detailed recommendations for the adoption and implementation of policies and practices to effectively minimize and combat those risks.

26.    The Defendants made conscious, knowing, and deliberate decisions to ignore the experts' warnings and recommendations because they

believed, as Defendant Green infamously remarked on April 8, 2020, "prison is safer than Costco."

27.     In April and May, 2020, in response to orders from the Supreme Court of Hawai'i and lower courts, the Defendants released approximately three hundred inmates from Hawai'i jails and prisons to bring the inmate populations closer to capacity and thereby alleviate the risks if the virus were to be found; however, with new and additional admissions the numbers of inmates in state jails and prisons rose and by July, 2020, returned to former levels, well over capacity.

28.     Despite the predictions and obvious risks to inmates and staff, the Defendants failed and refused to formulate and implement adequate plans to sanitize and prevent the spread of the virus and to quarantine, isolate, test, and treat inmates and staff when the first positive cases were found.

29.     Protective gear and supplies were not widely distributed or used; at OCCC sick inmates were allowed and required to be intermixed with still healthy inmates; testing was not available or widely employed, and more and more inmates and staff became ill.

30.     Following reports that kitchen and food line inmates had tested positive for COVID-19, the kitchen at OCCC shut down resulting in a deterioration of the food quality and late and irregular deliveries of food.

31.     Positive test results for COVID-19 were found in all nineteen modules at OCCC so that it was not possible to separate infected inmates from inmates who still have not tested positive and/or to protect the staff from having to work in close proximity with inmates who already are sick.

32.     Even after hundreds of cases of COVID-19 were diagnosed in the prisons among inmates and staff, there was virtually no separation between sick and healthy inmates, only minimal quarantine or follow-up procedures for inmates entering or leaving the facilities, and no assistance to safeguard staff or their families or the community.

33.     Because of the Defendants' knowing and deliberate inactions, cases of the COVID-19 began to be identified at OCCC in August, 2020, and quickly went from a handful to over three hundred to date, and it is estimated that many more persons are infected who have not yet been tested.

34.     Additionally, persons entering and leaving Hawaii's jails and prisons carried infections and/or a risk of infections into the community without any accountability, supervision, or assistance whatsoever.

35.     Commencing in early August, 2020, increasing numbers of DPS staff members were calling in sick or using personal leave as a means to avoid placing their lives and the lives of their family members in danger so that, as a

consequence, the prisons and jails have been grossly short-staffed, and employees are working double and triple shifts under stressful and dangerous conditions.

36.    Because of the COVID-19 breakout, inmates have had their trials delayed, their communications with and access to counsel and their families cut off entirely, and are without any means to protect themselves in the affected prisons and jails.

37.    Plaintiffs and the affected inmates and staff and their counsel made numerous pleas and efforts to obtain help to address and alleviate the threatening and growing crisis in the prisons and jails without significant response from any of the Defendants who appeared to be entirely inept and/or uncaring.

38.    Plaintiffs are informed and believe, and thereupon allege, that Defendants breached their duties to provide sufficient precautions, protection, separation, quarantine, testing, treatment, and care to prevent the spread of COVID-19 inside and outside Hawaii prisons and jails thereby endangering the well-being and lives of inmates, staff, and members of the larger community.

39.    Plaintiffs are informed and believe, and thereupon allege, that as a direct and proximate result of the foregoing the prisons' staff is and has been greatly depleted and is unable to properly care for and insure the safety, well-being, and rights of the inmates within their custody and control.

### A.    Plaintiff Brenon Nash

40.    Mr. Nash is a pretrial detainee who is and has been confined at OCCC since November, 2019, awaiting trial.

41.    Mr. Nash was assigned to a kitchen work line where he worked in close proximity with a staff worker who tested positive for COVID-19.

42.    After having being exposed to the staff worker with COVID-19 Mr. Nash waited for two days for his test results in the same module in which he had been living and undoubtedly exposed other inmates and staff to the virus due to the close living conditions and virtual absence of precautions including masks and other protective equipment.

43.    After having difficulty learning of his COVID-19 test results, Mr. Nash finally was informed and only then was removed to a living space where he is housed with other inmates who tested positive and are sick.

44.    Currently Mr. Nash is locked down twenty-four hours in his module with no programs or services, inadequate food, and no access to family, visitors, or his counsel.

### B.  Plaintiff Robert Gibson

45.     Mr.  Gibson currently is detained in Module 18 at OCCC awaiting sentencing.

46.    On August 12, 2020, Mr. Gibson was tested for COVID-19 after which he was returned to his assigned housing unit and waited for six days to be informed that his test came back positive.

47.    As the module clerk, Mr. Gibson has had access to internal information indicating that approximately two weeks ago a kitchen staff worker had tested positive, the entire work line was exposed, and the inmates were simply sent back to their housing units without any precautions where they undoubtedly infected other inmates and staff.

48.    Currently Mr. Nash is locked down twenty-four hours in his module with no programs or services, minimal food brought in to the module in bins, rather than separate plates, and no access to family, visitors, or his counsel.

**C.  Plaintiff Chauncy Hata**

49.    Mr. Hata currently is confined as a pretrial detainee at OCCC having entered the facility on March 11, 2019.

50.    On August 9, 2020, Mr. Hata's roommate developed a high fever and other symptoms with only minimal health checks provided to him.

51.    Two days later, on August 11, 2020, Mr. Hata's roommate was tested for COVID-19.

16

52.     From the time he first became ill to the time Mr. Hata's roommate received his positive test results the inmate remained housed in the same module where he infected Mr. Hata and other inmates and staff.

53.     During the entire period of time until his roommate tested positive and ultimately was removed, no protective gear or other precautions were provided to Mr. Hata or other inmates and staff in the module.

**D.  Plaintiff Lana Heick**

54.     Plaintiff Lana Heick is and has been a corrections officer employed at OCCC for over twenty years and has served as a sergeant for the past eight years.

55.     Plaintiff Heick currently is assigned to work in Annex 1.

56.     On or about August 7, 2020, Plaintiff Heick learned from another staff member than an inmate in Annex 1 had tested positive for COVID-19 after which Plaintiff Heick took sick leave.

57.     On August 11, Plaintiff Heick went to OCCC to be tested and was informed that night by the chief of security that because her test came back negative she was "good to go."

58.     On August 12, 2020, Plaintiff Heick returned to work at OCCC.

59.     On the following day, August 13, 2020, Plaintiff Heick was shown a list of the one hundred twelve inmates housed  in Annex 1 from which she learned,

for the first time, that sixty-five of those inmates had tested positive for COVID-19.

60.    Because she was extremely worried and frightened, Plaintiff Heick again called in sick on August 14 and 15, and on August 16, 2020 she obtained another test, at her own expense, which confirmed that she was positive for COVID-19.

## FIRST CAUSE OF ACTION

61.    Plaintiffs hereby incorporate and reallege the allegations contained in Paragraphs 1-60, above.

62.    The Defendants have acted herein and/or refused to act knowingly, intentionally, maliciously, and with clear and obvious deliberate indifference and disregard to the risks and dangers to which they have exposed Plaintiffs and potentially tens of thousands of persons in and outside the jails and prisons.

63.    As a direct and proximate result of the foregoing the named Plaintiffs and the entire Plaintiff Class have been and will continue to be exposed to severe and even deadly risks and dangers associated with the COVID-19 including pain, suffering, emotional distress, and potential long term and permanent conditions and disabilities in amounts to be proven at trial.

64.    As a direct and proximate result of the foregoing the Plaintiffs have incurred and will continue to incur costs for medical treatment and care in amounts to be proven at trial.

65.    As a direct and proximate result of the foregoing the Plaintiffs are likely to incur loss of earnings and income in amounts to be proven at trial.

66.    As a direct and proximate result of the foregoing the inmate Plaintiffs have suffered and are continuing to suffer the loss of their rights to due process, counsel, and to be protected from cruel and unusual punishment in violation of rights guaranteed to them by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I of the Constitution of the State of Hawai'i, inter alia.

67.    Plaintiffs are informed and believe, and thereupon allege, that the Defendants are acting herein under color of law in violation of rights afforded to them pursuant to 42 U.S.C. Section 1983, inter alia.

68.    Plaintiffs have exhausted all available remedies and/or have no other remedies available to them to redress or provide the relief sought herein.

## SECOND CAUSE OF ACTION

69.    Plaintiffs hereby incorporate and reallege the allegations contained in Paragraphs 1-60, 63, 64, and 65, above.

70.    The Defendants in their official capacities, have acted herein negligently thereby proximately and directly causing the injuries and damages complained of by Plaintiffs in amounts to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For certification of the proposed Class;

2.    The entry of a Judgment declaring that the through their acts and omissions Defendants knowingly, deliberately, and willfully exposed Plaintiffs and members of the Plaintiff class to a serious and potentially fatal illness, namely, the COVID-19 virus;

3.    For general and special damages in amounts to be proven at trial;

4.    For punitive or exemplary damages against the Defendants in their individual capacities;

5.    For reimbursement of their costs including reasonable provision for their attorneys' fees;  and

6.    For such other relief as the Court may deem equitable and just.

DATED:    Honolulu, Hawaiʻi, September 21 , 2020.

/s/ Eric A. Seitz_____
ERIC A. SEITZ
GINA SZETO-WONG
JONATHAN M.F. LOO
KEVIN YOLKEN
Attorneys for Plaintiffs